We'll hear next from the parties in Time Warner versus International Brotherhood of Electrical Workers. Good afternoon, your honors. May it please the court. The crux of the issue before the court today is really an issue of contract formation, not contract interpretation, as Time Warner would have you believe. And if you look at the Second Circuit decision in Puerto Rico, the court is to respect the expiration date chosen by the parties in the collective bargaining agreement. In Linton, the Supreme Court had said that the no strike clauses do not survive the collective bargaining agreement. It also held that a rational NLRB decision will not be disturbed by the court on appeal. And it's also important to point out, Time Warner Cable never appealed the one board decision that says there's no contract, no meeting of the minds. And lastly, in NLRB v. Strong, it's- How do you respond to the waiver argument? In other words, the parties proceeded in front of the arbitrator as if there were a collective bargaining agreement. The board addressed that, your honor. The board said that the parties were mistaking about whether or not there was a contract. And if you look at MISCO and Metro Edison, that- I don't know if that mistake is the right word. I mean, the union argued that indeed there was a collective bargaining agreement. And everyone proceeded as if there were a collective bargaining agreement. Yes, and the reason for that, your honor, so if I go through the timing of events, right around the time of the issuance, Time Warner files its charge against the union on the failure to execute the agreement. And the union also filed on the discipline of the employees. Now, we filed our ULP in April 18th of 2014. That decision was not issued until June of this year. The board, the region held back for eight months before they decided to dismiss Local 3's ULP. So during that period of time, the other region issues a complaint on behalf of Time Warner's claim and dismisses ours. And the reason that they say they dismiss it is because they said it was a contract in place. So- I'm not understanding how that answers the question at all. Before the arbitrator, and this the district court found, you expressly asked the arbitrator to determine your liability under the no strike clause of the 2013 collective bargaining agreement, am I right? Correct, your honor. All right, why isn't that waiver and the end of it? Because there was no contract. It was subsequently determined that there was no contract. That's not the issue. The issue is whether before the arbitrator in this proceeding, you waived any right to urge anything other than that the 2013 CBA was the binding document. I understood, your honor, but- So the fact that later on there was found to be no agreement isn't the issue. It's whether you waived that argument in this proceeding. I would agree with you, your honor, except as soon as we found out that there was no agreement, right? Because the parties went back and forth asking for the riders to the agreement. The employer at the time could have just handed over the riders, and yes, there would have been an agreement in place. However, by waiting for that period of time, we would damage as well. So the second- That the union accepted many benefits under the collective- And if you look at the cases- Is that right? Yeah, if you look at the cases, and this is where this case is unique, your honors. In most cases where you have a case where there's no contract that you- It seems like you want the CBA to remain in place for purposes of the benefits or the- Not at all, your honor. Increases that you got out of it, but not- Not at all, your honor. And that's why as soon as we learned the ALJ issued his decision, saying there's no meeting of the minds and no contract, we immediately alerted not only our arbitrator in this case, but in ten other arbitrations that we withdrew our demand for arbitration because we were proceeding as no longer, as there's no- Five months after the arbitrator had issued an interim adverse award. But, your honor, the lower court, the lower court said, putting aside, they don't even address whether or not there's a collective bargaining agreement in place at the time, and the board will address that today before your honors. What they did do is say, put the collective bargaining agreement aside. That the issue presented on July 24th is what gave subject matter jurisdiction to the court. That's what Judge Weinstein said. And to quote Judge Weinstein precisely, he says, at special appendix 39, under the magic of the broad federal arbitration statute, an arbitration may be specifically authorized by the parties to decide whether a non-operative, no strike clause has been violated, and to assess damages. He continues, for purposes of the specific arbitration, the no strike clause in the CBA, as well as the CBA itself, could be assumed to be operative by the arbitrator. He doesn't say that it is operative. The court does not look at whether or not the collective bargaining agreement is in effect. Goes on further in special appendix 39 and 40, saying that the separate freestanding valid specific arbitration agreement expressly granted the arbitrator the authority to decide the dispute as if there were a more general agreement not to strike. So in order to have a waiver, we have to know what we're waiving. The union has to know what it's waiving. We had no idea at the time. And on July 24th- I don't understand that at all. If you wanted to argue to the arbitrator, there's no agreement here. You could have argued that. You waived that. It would be the same as being in a district court on some other action, not raising a challenge to a statute, in fact, waiving the challenge. And then there's a decision by a higher court some months later that suggests that you could have had a viable challenge. You've waived that. But we would have raised it at the arbitration. However, the regional director dismissed our ULP, which was later reinstated. We appealed that to the appeals, and they reinstated it. And all throughout, it was really a question of justice delayed is justice denied. Had the complaint been issued when we filed the ULP, we would have raised it at the arbitration. But because the regional director delayed issuance, in January 5th of 15 is when it's dismissed. It's not reinstated until a year later in January of 16. At the same time, Time Warner Cable's ULP is going forward as though we breached a collective bargaining agreement. So we have one region that says, we're not going to issue a complaint because you violated the collective bargaining agreement. Yet, when they go forward with their ULP, it goes to hearing, it goes to the board, and it's determined that there is no collective bargaining agreement. So we were led to believe, because the region dismisses our ULP, not even the complaint. And because the other region issued the complaint on Time Warner's ULP, we were led to believe that they were going to find that there was no contract, that there was a contract. Were you challenging that dismissal? Challenge? Yes, we did challenge the dismissal, and it was set aside. And my point is, this court in Opals on Ice Lingerie said that it's waiver unless you clearly and explicitly reserve the right to object to arbitrability. So you could have said to the arbitrator, look, we'll agree to you considering it under 2013 CBA. But we have this challenge, and I want that clear on the record, that if we get a favorable ruling, we're going to challenge arbitrability here, but you didn't do that. Putting aside the contract for the moment, there is still six public policy reasons why this cannot be enforced. And I will let you hear, we'll hear you on those, but how do you deal with the conclusion in Opals on Ice Lingerie? Again, that is where an employer challenges whether or not there's a contract in place. When an employer is going to challenge it, the union would know first, right? The balance of powers in a labor relationship is the employer has all the cards in its pocket. Ruling is not if an employer submits, it's if a party submits an issue to arbitration. He cannot await the outcome and then later argue that the arbitrator lacked authority unless he preserved the issue. But the arbitration can be set aside if it's in direct conflict with well established public policy. And here the public policy is six fold. You have a board decision that says there's no contract. You have a joint exhibit 480, the NLRB denying Time Warners ULP. You have them denying another ULP at JA 500, all because they're saying that the employees engaged in protected activity. You also have section seven of the act that says that the parties have the right to engage in concerted activities. Fourthly, under section 13 of the act, you have the right to strike that shall not be impeded or diminished. Section 8D of the act says if the parties agree to an agreement, they're required to sign off on it. The board dismissed those charges as well. And lastly, which was not addressed by either the arbitrator or the lower court, is Master of Plastics. Master of Plastics says the right of employees to strike in resistance to ULPs by the employer is a fundamental right. So even if the contract's in place, it is a fundamental right, which the statute recognizes, and no contractual waiver is to be inferred from a general provision in the CBA. All right, do you want to use your reserved time, or do you want to save it? I'll save it, Your Honor. All right, thank you. We're going to hear now from the intervener. May it please the court, my name is Sarah Posner, counsel for the National Labor Relations Board. The NLRB is appearing today solely as cross appellee, urging this court to affirm the district court's decision not to enforce the arbitrator's prohibition on future work stoppages by the union. Our interest here is that this lawsuit not be used as a means to undermine the NLRB's finding of no contract in the unfair labor practice proceeding. We are satisfied with how the district court resolved this conflict. Our concern is that this court not revive a collective bargaining agreement that the NLRB said is not operative. The district court thought that the parties had not submitted to the arbitrator the question of what should happen in the case of future strikes, right? Correct, that exceeded the scope of the arbitration. And you're satisfied with that ruling by the district court? Yes, correct. By eliminating the perspective portion of the arbitration award, we found that the district court relied instead on the party's July 24th, 2014 submission to arbitration, and therefore preserved the board's no contract finding. Absent a valid contract between the parties containing a clear and unmistakable waiver of employee's right to strike, there was no legal basis for the arbitrator to impose such a drastic restraint on the rights of employees. Strong public policy in favor of preserving the right to strike, combined with Supreme Court precedent establishing that no strike clauses do not survive contract expiration, and waiver of a right to strike needing to be clear and unmistakable, dictates that the perspective portion of the arbitration's award is antithetical to public policy. In their reply, Time Warner maintains that the collective bargaining agreement between the parties never expired, relying on the union's acquiescence to arbitration as the union's admission of a valid agreement between the parties. However, as the NLRB explained, Local 3's conduct simply demonstrates the mistaken belief that the parties reached an agreement. It does not bear on the relevant question of whether the parties reached a meeting of the minds concerning all material terms of a successor contract. Likewise, Time Warner's reliance on case law regarding the general council's dismissal of charges is misplaced as it glosses over the important distinction. So what is the status? From the board's point of view, there's no collective bargaining agreement in place. Correct, that's the status. And so what governs the relationships between the parties? The parties are obligated to maintain the status quo. The status quo meaning as if the old agreement were still in place? Well, there are certain terms that have to be carried over under the act. However, a waiver of the right to strike needs to be specifically agreed upon, as does the unagreement to arbitrate. So the status quo to an extent, then, is what you're saying? Yes, correct. The status quo to an extent minus- And how does one determine to what extent? Well, that's outlined by the act, which governs. Which says what on this? I mean, I guess our concern is in the 2009 act and in the 2013, I'm sorry, not act, the CBA, and the 2013 CBA, there are waivers of the right to strike. And so you could understand the contract, the other provisions, to have been entered into imparting consideration for also getting the waiver. So what is it that tells us what parts are in effect and what parts aren't? When they maintain the status quo. The NLRA has certain provisions saying that, for example, grievances still need to proceed, and that certain terms would continue on. However, the parties must, according to Litton, the parties must explicitly agree to arbitrate their disputes, and the union must explicitly give up the right to strike. So are you saying there is no arbitration obligation- Correct. Going forward? Correct, there's no arbitration obligation. So that's not part of the maintaining the status quo? Correct. Thank you. Sure. Thank you. Thank you. All right, Mr. Margolis. Good afternoon, my name is Kenneth A Margolis of Council Tkalf, McGuire, and Margolis, attorneys for Time Warner Cable. Just to follow up on that last discussion, is it Time Warner, does Time Warner agree that there is no CBA in effect as of now? We absolutely do not agree. Your Honor, we couldn't disagree more firmly with that proposition. And the reason I say that is that it's undisputed that on March 28, 2013, the party signed a memorandum of agreement that extended their collective bargaining agreement for four years. After Local 3 trumpeted the unanimous ratification of that agreement, Local 3 and its members reaped the benefits of that agreement for two years. It's also undisputed that Local 3 repeatedly invoked the arbitration provision under that collective bargaining agreement. They filed for arbitration- Do we need to decide that question? I mean, in essence, that would be reviewing the board's decision that there was no meeting of the minds. Your Honor- And I don't know that that's really before us. With all due respect, we believe you do need to decide that question, and we do not believe that it constitutes reviewing the board's decision. And the reason I say that, and it really goes to the heart of the union's case here, the linchpin of Local 3's argument, is that this 2015 decision of the NLRB on the unfair labor practice charge that was filed by Time Warner Cable, retroactively invalidated the collective bargaining agreement that the parties had been living under for two years. That's the heart of their argument. And I'll address in a moment why that decision has no bearing on this case, which arises under Section 301 of the Labor Management Relations Act. But I think it's worth noting that since Local 3 is asking the court to essentially defer to the board on what is the court's responsibility under Section 301, we have to observe that it's far from clear what the board's decision even means, and what its implications are regarding the current existence of the party's no strike and arbitration agreement. Shouldn't that be litigated in the context, or it should have been, in the context of the board decision? Well, it shouldn't, Your Honor, because there was a very narrow issue before the board. In the board unfair labor practice case, which arose under the National Labor Relations Act, the allegation was that the union committed an unfair labor practice by refusing to sign the collective bargaining agreement that was tendered to them by the company. And the administrative law judge affirmed by the board found that the parties had differing understandings as to whether those riders, addressing some tangential issues, they had differing understandings as to whether those riders were to continue or not. And once the administrative law judge made that finding, that the parties did not have a meeting of the minds on that narrow issue, that should have ended the case. Because if there was not a meeting of the minds on the riders, then when Time Warner Cable tendered a document that did not include the riders, it was not an unfair labor practice for the union to refuse to sign it. So that narrow issue was entirely sufficient to resolve the unfair labor practice case. No issue was presented in the unfair labor practice case about a much broader issue of whether there was a collective bargaining agreement. The only issue was whether this document that Time Warner Cable tendered accurately reflected the party's agreement. And again, because there was not a meeting of the minds on that narrow factual issue of the riders, that was the end of the unfair labor practice case. That's an entirely different issue and entirely different standards that apply before the district court here and before this court, which arises under Section 301 of the Labor Management Relations Act. First of all, as I've already explained, the language in the board decision in the unfair labor practice case about no contract, that is there was no meeting of the minds on the riders and therefore no contract, was pure dicta. Because the board was not called upon to decide whether any collective bargaining agreement was in place, only whether the document that was tendered accurately reflected an agreement. But beyond that, beyond that, at the core of Local 3's position is that the district court and this court should blindly follow that dicta in the unfair labor practice case before the board. And ignore this court's obligation under Section 301 to decide if, in fact, there's a collective bargaining agreement. And that is a completely unsupportable and unsupported abdication of this court's role. The Supreme Court in the Litton case took great pains to point out that courts and arbitrators are the primary sources of the administration and interpretation of collective bargaining agreements, and Section 301, the court said, requires courts and arbitrators to establish the common law of collective bargaining agreements. Now, the NLRB, in some cases, may have occasion to decide whether a collective bargaining agreement is in effect. They may need to do that in order to exercise their limited jurisdiction of deciding whether an unfair labor practice was committed under the National Labor Relations Act. But the NLRB has no role whatsoever in the application of Section 301 of the Labor Management Relations Act. No role whatsoever. In fact, we can see this acknowledgement in Local 3's brief, in the appellate standard of review, in Local 3's own brief. It says, quote, when the underlying dispute involves rights under a collective bargaining agreement, this court's analysis is governed by Section 301 of the Labor Management Relations Act, citing this court's very recent decision in the NFL Management Council case. So this is a Labor Management Relations Act Section 301 case. It's not an unfair labor practice case. And in fact, not only are these different statutes, but there's a very fundamental difference, because when the NLRB does venture into whether a collective bargaining agreement has been formed, again, it can only do that for purposes of deciding an unfair labor practice charge. Your view is we ignore the board's decision in the unfair labor practice case? That's correct, Your Honor, because this case, that is, this case which involves a court's narrow review of an arbitration award, arises under Section 301. What if we don't ignore it? What if we agree with the board or we don't question the board's decision? Then there would be no CBA, there would be no strike provision, and there could be no breach? How do you respond to that? That's not correct, with all due respect, Your Honor, because again, the board did not have the authority and was not called upon to decide whether under the standards of Section 301, there's a collective bargaining agreement. What happens if we assume the board decision holds true? Then what? Your Honor, we're not here taking issue with the board's decision. In other words, properly read, the board, as it was called upon to do, decided a narrow factual question. Did this document that was tendered by Time Warner Cable accurately reflect the party's understandings? And because there was a dispute about whether the riders should or should not be included, it was not an unfair labor practice for the union to refuse to sign that document. That was the only important- Can we agree to any of that, or can we just rely on waiver? Of the issue of the validity of the contract that the party's asked to have the arbitrator do it under the 2013 agreement. Your Honor, we believe that the case can be disposed of entirely on the basis of waiver. That is, it's a very bedrock principle that a party who does not timely object to arbitrability waives any objection. Now, your adversary argued in response to that, that what makes this case different is that they waived it because they had just lost in another proceeding. And that that should distinguish this case from another, that they didn't waive it in the classic sense that some of the other cases have involved. So what's your response to that? Your Honor, with all due respect, the union's argument is absurd, and I'll explain why. July 24th, 2014, is when the union signed the agreement that said we agree to submit to the arbitrator the issue of whether the union violated the no-strike provision of the collective bargaining agreement. And if so, what shall be the remedy? July 24th, 2014. The union claims, and Mr. Glennon claimed today, that, well, we had no idea there was an issue about whether there was a collective bargaining agreement. We thought at that point that there was a collective bargaining agreement. Well, in fact, in fact, at the time Local 3 signed that agreement, July 24th, 2014, the issue of a dispute about whether there was a collective bargaining agreement in place had already been teed up. That is, Time Warner Cable had filed its unfair labor practice charge in March of 2014, four months earlier. And here is what Local 3 wrote in its initial brief to the district court in April of 2014. Quote, the union and Time Warner Cable have been parties to a series of collectively bargained agreements, the most recent of which having expired on March 31st, 2013. But the NLRB will have to determine whether the parties, in fact, reached an agreement for a successor agreement. So Local 3 was well aware of a potential issue in April of 2014 that the board might issue a decision that has some relevance to whether there was a collective bargaining agreement. And notwithstanding that they were well aware of that, they signed the agreement in July 2014 in which they agreed to submit to arbitration without condition, without qualification of any kind, the issue of whether the union violated the no-strike clause, and if so, what shall be the remedy. Thank you. Mr. Glennon, you have the opportunity to reply. Just quickly, Your Honor, picking up where counsel left off, the reason that we brought it up in April is we filed the ULP and it was later indicated that it was going to be dismissed. So putting that aside, I think what the court- The point is the issue was teed up before you entered into the July 24th- Right, and then the region dismissed our ULP saying that there was a contract in place, which is later rescinded. So I want to get past the contract issue because really the bigger issue I can see with the justices here today is the issue of public policy. It's still- One second. You still did execute the agreement to submit the matter to arbitration full well-knowing, right? It was, we agreed to an issue- Without qualification. Without qualification. And it says- It's called arbitration submission. The undersigned parties agree to submit the following dispute for binding arbitration. No qualification. But it says whether the parties violated the collective bargaining agreement, right? Did the union violate the no-strike provision of the collective bargaining agreement? Right, and in the no-strike provision of the collective bargaining agreement, it says during the term of this agreement. That agreement was expired on March 31st of 2013, during the term of this agreement. So I really want to make the points on the public policy, even if you agree that there's a contract. Again, if you look at MASTROPLASTICS. MASTROPLASTICS stands for the proposition that a general no-strike clause in a collective bargaining agreement does not apply to a ULP strike unless there's a clear waiver. So how, picking up what Judge Carney just raised, how can a general, did the union violate the no-strike provision of the CBA, not require a waiver to be bound to an expired CBA? We can't say, we're going to go ahead with this because we know it's expired, but we didn't know it was expired. And council only highlighted that point. We filed the ULP, the region says we're dismissing it, and I'll just go through it quickly. April 18th, 2014, we filed the ULP. Eight months later, January 5th, 15, the region dismisses it. We file an appeal with DC, and on January 29th of 2016, they reopen it, pending the outcome of the board decision on whether or not there's a contract, and then issue the complaint, which goes forward. And we have an ALJ decision in June 14th of 2016, Your Honor. So there is a clear prohibition under MISCO and Metro Edison under the Supreme Court for enforcing an award that would violate public policy, strong public policy. Thank you, Your Honor. Thank you to all parties. We're going to take the matter under advisement.